This is an appeal from convictions and sentences following a jury trial before Judge Daniel Gaul. Appellant Lewis Payton claims the guilty verdicts for breaking and entering, possession of criminal tools, receiving stolen property, and vandalism were against the manifest weight of the evidence and that he could not be sentenced separately for breaking and entering and vandalism because those charges were allied offenses of similar import. We disagree and affirm the convictions, but find plain error in sentencing and vacate the sentence and remand for resentencing.
From the record we glean the following. At about 3:00 a.m. on January 7, 1999, Garfield Heights police officer Robert Byrne was in a car on patrol when he heard an alarm sound from the closed Garfield Boulevard Convenient Store at 8808 Garfield Boulevard, at the corner of East 88th Street. At the same time Byrne heard the alarm he saw a person run across a parking lot across the street from the store and dive out of sight behind a parked car. Byrne claimed that, although lighting conditions were not perfect, there were working street lights in the area and snow on the ground that helped make conditions somewhat brighter, and he described the person as a male wearing a black knit cap and blue winter jacket, but that his face was covered. He believed the man's face was covered by his stocking cap, which looked to be the type that pulls down over the face.
When Byrne drove toward the car, discovered later to have been stolen, he activated his spotlight on the area, saw the man lying on the ground in an apparent attempt to hide underneath the car, and ordered him to get up. As the man ran away, Byrne observed that he was carrying two bags, one blue and the other white. He broadcast the description of the man and followed him in his patrol car until the man ran behind a building. At that point Byrne ended his pursuit of the man and returned to the store to investigate.
Byrne discovered that the front door of the store was open, and that the back door of the store had been pried open from the bottom enough to allow a person to crawl underneath without disturbing a lock at the top of the door that would have set off an alarm.[1] He returned to his car and radioed that a break-in had in fact occurred at the store, and resumed looking for the suspect.
Officer Leonard Soltis, who was already in the area, promptly responded to the radio broadcast and he and Byrne began searching the yards and alleyways in the area, beginning where Byrne had last seen the suspect. Soltis followed a set of footprints in the snow to a garage at 8610 Garfield Boulevard, searched under the cars in the garage and saw nothing, but as he began to look inside the cars, discovered then 44 year-old Payton, wearing a blue winter coat with a white collar, lying in the back seat of a blue Geo Tracker. Byrne arrived shortly thereafter and discovered a black knit hat just outside of the vehicle, and a separate face mask on the ground within ten feet of the garage. Soltis then found, about fifty feet from where Payton was found and behind the fence separating the garage from the adjacent property at 8616 Garfield Boulevard, a blue bag and a white bag.
The white bag contained a purse, a jar of perfume and a shower curtain, while the blue bag contained tools, including crowbars of different sizes and two screwdrivers. The purse belonged to Tracy Folmer, an employee of the convenience store, who testified that she had left it at work the night before. The purse, which she said was worth twenty dollars, contained her identification cards, a credit card, and an address book, but no money. Another store employee, Patricia Burgbacher, stated that she had seen Folmer's purse in the store when it closed at 11:00 p.m. the night before.
On March 8, 1999, Payton was indicted on four counts, each a fifth degree felony possession of criminal tools, R.C. 2923.24, vandalism, R.C. 2909.05, and receiving stolen property, R.C. 2913.51, and the jury trial commenced on May 26, 1999.
Payton did not testify in his own defense and presented no witnesses, but through cross-examination and argument he claimed that the circumstantial evidence of his guilt was insufficient to convict, as he had not been seen in the store, had not been positively identified as the man running across the parking lot or hiding under the car, and was not shown to be in possession of the cap, mask, or bags. Through cross-examination of Garfield Heights police detective Walter Augustyn, the jury was informed that the police officers failed to compare Payton's boots with the footprints at the scene, and failed to search for or find fingerprint evidence on the crowbars or in the store. Detective Augustyn also testified that paint chips found on the crowbars were tested, but did not match the paint at the convenience store. Payton's lawyer also cross-examined Burgbacher, who testified that she believed a different man had been casing the store before it closed on January 6, browsing for ten or fifteen minutes without buying anything.
After close of the State's case, Payton moved for judgment of acquittal on all counts, and also moved for acquittal on either the breaking and entering or vandalism counts, claiming that they were allied offenses of similar import and he could be convicted of only one, but the motion was denied. On May 28, 1999, the jury returned verdicts of guilty on all counts. On July 8, 1999, Payton was sentenced to four consecutive one-year prison terms.
Payton's first assignment of error states:
I. THE VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Even though evidence is legally sufficient to sustain a conviction, a verdict may still be against the manifest weight of the evidence. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546. Unlike the sufficiency review, a court reviews the credibility of evidence when considering a manifest-weight argument, and sits as a thirteenth juror. Id. at 386-87, 678 N.E.2d at 546-47. Under the manifest-weight test:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id. (quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-21).
Payton maintains that the circumstantial evidence used against him was too unreliable to sustain a conviction, as the police did not determine whether footprints at the store matched his, and did not search for or find his fingerprints in the store, on Folmer's purse, or on the crowbars. He claims that Byrne could not credibly identify him because Byrne only saw a suspect wearing a ski mask from some distance away in the dark, and that he could only be coincidentally linked with the discovery of the bags. We disagree.
The jury heard substantial competent and credible evidence justifying conviction, and was entitled to reach the verdicts returned. Circumstantial evidence is competent, probative evidence and can be the sole basis of a conviction. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph one of the syllabus. Although circumstantial, the evidence here pointed strongly, almost inescapably, toward Payton. After chasing a suspect from the scene of a break-in, police found Payton inexplicably hiding in the back of a car that did not belong to him, in a garage that was not his residence. He was wearing the same color clothes as those the suspect was seen wearing, and two bags the suspect was seen carrying were found within fifty feet of his hiding place. One of the bags contained a purse that was identified as having been inside the store when it closed four hours earlier. The jury reasonably concluded that Payton was guilty of the acts alleged, and we find no manifest injustice in his convictions. We overrule Payton's first assignment of error.
The second assignment states:
 II. WHEN THE APPELLANT WAS CONVICTED AND SENTENCED SEPARATELY FOR BREAKING AND ENTERING AND VANDALISM, THE CONVICTION FOR VANDALISM IS IN VIOLATION OF R.C. 2941.25.
Payton claims that the offenses of breaking and entering, R.C. 2911.13, and vandalism, 2909.05, are allied offenses of similar import pursuant to Ohio's multiple-count statute, R.C. 2941.25, and he cannot be convicted of both offenses when they are based on the same conduct. Although this argument might have merit if the allied offense determination focused on the specific facts of his case, we find it fails under the abstract analysis of the offenses mandated by State v. Rance (1999),85 Ohio St.3d 632, 710 N.E.2d 699, paragraph one of the syllabus.
Under Rance, two offenses will not be allied if each contains an element that the other does not, such that, in the abstract, each offense can be committed without committing the other. Id. at 638-39,710 N.E.2d at 705. Payton was charged with breaking and entering pursuant to the elements of R.C. 2911.13(A), which require (1) the use of force, stealth, or deception, (2) to trespass in an unoccupied structure, (3) with purpose to commit a theft offense or felony inside. He was charged with vandalism under the elements as stated in R.C. 2909.05(B)(1)(b), which required (1) the knowing causation of physical harm, (2) to property owned by another, (3) when the property was necessary in order for the owner to engage in his profession, business, trade, or occupation. Looking at the elements of these crimes in the abstract, each contains at least one element that the other does not. Breaking and entering requires a purpose to commit some further offense, an element unnecessary to a vandalism claim. Vandalism requires the knowing causation of physical harm to the property, an element unnecessary to the force, stealth, or deception element of breaking and entering.
The State has argued that Payton's convictions are in fact based on separate conduct, as the jury could have found him guilty of entering by stealth or deception when he crawled through the back door after prying it open with the crowbar, and thus the act of prying open the door was used to support the vandalism charge only. We see no need for such parsing. Under Rance one need not show that the separate offenses were committed through separate conduct, but only that they could have been. The facts of this case show that Payton was convicted of breaking and entering and vandalism for the same conduct — his use of a crowbar to pry open the back door of the convenience store. Despite his complaints, however, Payton can be convicted of two offenses for the same conduct when authorized by R.C. 2941.25. Pursuant to Rance, we can only conclude that the convictions here are so authorized. We overrule Payton's second assignment of error.
Although we affirm Payton's convictions, we must once again recognize and correct plain error in the sentencing proceedings. See State v. Slagter (Oct. 26, 2000), Cuyahoga App. No. 76459, unreported. Each of Payton's four offenses was a felony of the fifth degree, carrying a maximum prison term of twelve months. The judge sentenced Payton to four consecutive prison terms of twelve months, the maximum allowable sentence. In imposing this sentence, the judge was required to comply with several mandates of Ohio's sentencing statute, R.C. Chapter 2929. Particularly, he was required to find 1) that a prison term was warranted for the fifth degree felony convictions, R.C. 2929.13(B); 2) that the maximum prison term for each offense was warranted, R.C. 2929.14(C); and 3) that consecutive sentences were warranted, R.C. 2929.14(E)(4). In addition to these findings, he is required to state his reasons for imposing consecutive sentences, R.C. 2929.19(B)(2)(c), and for imposing maximum prison terms for each offense, R.C. 2929.19(B)(2)(d). The four-year total prison term also required a statement of reasons under R.C. 2929.19(B)(2)(e), as it was imposed for offenses arising out of a single incident yet far exceeded the maximum term available for any single offense.
The record shows that the judge focused his attention on justifying his reasons for imposing a prison term of any kind upon Payton. R.C. 2929.13(B) begins with a presumption that fifth degree felony offenders should be imprisoned only if they satisfy a number of factors. The judge must first find that the offender satisfies one of the factors listed in R.C.2929.13(B)(1)(a) — (h). In this case Payton satisfied divisions (g) and (h); he had previously served a prison term, and had previously committed offenses while subject to community control sanctions. Payton was in fact on post-release control for another offense when he committed the instant crimes.
Having satisfied the requirements of R.C. 2929.13(B)(1), the judge was then allowed to impose a prison sentence on Payton after satisfying R.C.2929.13(B)(2)(a), which states:
 If the court makes a finding described in division (B)(1) * * * of this section and if the court, after considering the factors set forth in section 2929.12
of the Revised Code, finds that a prison term is consistent with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code and finds that the offender is not amenable to an available community control sanction, the court shall impose a prison term upon the offender.
The judge considered Payton's lengthy history of convictions, his lack of response to community control sanctions, and his admitted drug abuse problem, as well as finding that he lacked remorse for the offenses, in deciding that a prison term was necessary. He stated:
 So, you know, you come in here with this horrendous record, okay, you have had the opportunity on numerous occasions to get into drug treatment, hasn't worked. Despite that fact, despite the evidence, you try the case, you demonstrated no remorse, and now you expect a break from me? * * *
 According to Section 2929.13 of the Ohio Revised Code, I'm going to — must weigh a number of factors and the fact of the matter is you have a long history of criminal convictions. Indeed this conviction occurred while you were on community control sanction. You do not demonstrate any remorse, you have an extremely deleterious effect upon the community. We have to process you 25 to 50 times. The only time you're drug free is when you're incarcerated. So I think it's necessary to incarcerate you.
The record fully supports the imposition of a prison term on Payton, and shows the judge's consideration and application of R.C. 2929.13. However, the court next imposed four consecutive maximum prison sentences, stating:
 Mr. Payton, I very infrequently consecutively sentence somebody but I am going to consecutively sentence you. I'm going to sentence you to a year on each count. So that's four years. * * *
 You know, this isn't about me being mad or anything like that. It's just that you're out of control. You've been given every break, every opportunity to deal with your drug problem and we can't get you to change. You must constantly be arrested and processed, booked, fingerprinted and indicted, tried.
 Now you're going to appeal I'm sure. Then you must be consecutively sentenced. So you're going to do four years. Credit for time served. * * *
 * * * It's regrettable, but the only time you're drug free and not committing crimes is when you're incarcerated.
 I think it's incumbent upon me to protect the peace and dignity of the State of Ohio. I'll put you away for four years. We don't have to be subjected to your lawlessness for that period of time.
The foregoing passage definitely shows the judge believed that the likelihood of recidivism justified the consecutive sentences, however, he did not consider other necessary factors relevant to consecutive sentences, nor did he acknowledge the existence of statutory requirements concerning consecutive sentences under R.C. 2929.14(E)(4). He completely failed to acknowledge that he was imposing the maximum prison term for each offense, or that R.C. 2929.14(C) required him to make particular findings before so doing.
Before imposing consecutive sentences, a judge first must find that they are necessary to protect the public from future crime or to punish the offender[.] Next, he must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.] Finally, he must find the existence of at least one of three factors, the first being that the, defendant committed the offenses while awaiting trial or sentencing on another matter, or while subject to parole, probation, or other sanctions from a prior offense. R.C. 2929.14(E)(4)(a).
Payton's offenses were committed while he was on post-release control for another offense and, had the judge indicated his recognition of the statutory requirements, his demonstrated concern with recidivism would have constituted a finding that the sentences were necessary to protect the public from future crime. However, he gave no indication that he was aware of or considered R.C. 2929.14(E)(4)(a) prior to imposing the consecutive sentences, instead rendering the highly suspect statement that Now you're going to appeal I'm sure. Then you must be consecutively sentenced.[2] A judge's statements cannot be accepted as findings unless the record shows that the judge recognized and considered the relevant factors. The judge must note that [he] engaged in the analysis set forth in the applicable statute. State v. Edmonson (1999),86 Ohio St.3d 324, 326, 715 N.E.2d 131, 134. Because there is no indication that the judge was aware of the need to render findings concerning the consecutive sentences, his statements relative to any such findings are coincidental.
Even if the statements could be seen as expressing one finding concerning the imposition of consecutive sentences, the judge nevertheless failed to find that the sentences imposed were not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. He made no attempt to assess the proportionality of the sentence to the seriousness of Payton's conduct in this case. Although Payton did appear to pose a strong likelihood of recidivism, the provisions of R.C. 2929.14(E)(4)(a) do not allow consecutive sentences based solely on that likelihood. The sentences must also fit the conduct in the case at hand. Here it appears that the judge imposed the sentence based on Payton's past convictions, as the seriousness of the offenses committed did not themselves warrant a four-year prison sentence.
Finally, the judge imposed the maximum prison term for each offense, without commenting on the need to make findings supporting such terms or even acknowledging the fact that he was imposing the maximum sentence. R.C. 2929.14(C) states that a judge is allowed to impose the maximum prison term only upon offenders who committed the worst forms of the offense, or who pose the greatest likelihood of committing future crimes. Again, it appears that the sentences were imposed because of Payton's criminal history and likelihood of recidivism, and not based upon the seriousness of his crimes. As with the consecutive sentences, we cannot accept the judge's statements as relevant to the imposition of maximum sentences when he gave no indication that he understood the need to justify those sentences.
In addition to the findings required before imposing consecutive sentences or maximum terms, R.C. 2929.19(B)(2) requires that the judge give reasons for those findings. The record shows no attempt to comply with these provisions. Where, as here, the judge has imposed maximum consecutive terms resulting in the longest prison term statutorily allowed, we are especially loath to imply findings and reasons whose necessity the judge has not acknowledged. We therefore vacate Payton's sentence and remand for resentencing.
Judgment of conviction affirmed, sentence vacated and remanded.
It is ordered that the appellee recover from appellant its costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J., CONCUR; LEO M. SPELLACY, J., CONCURS IN JUDGMENT ONLY WITH SEPARATE CONCURRING OPINION.
[1] The alarm was sounded by a motion detector inside the store.
[2] Although this might simply have been a clumsy statement, we have previously expressed our concern with this same judge's inappropriate comments during sentencing. See State v. Warren (1998),125 Ohio App.3d 298, 308, 708 N.E.2d 288, 294-95. Moreover, in the same proceeding the judge berated Payton and made a statement that could be inferred as meaning that his sentence was imposed based on Payton's decision to go to trial (Despite that fact, despite the evidence, you try the case, you demonstrated no remorse, and now you expect a break from me?). We again implore a judge to refrain from such comments.